| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** | |
| Caption in Compliance with D.N.J. LBR 9004-2(c)<br><br>**Greenbaum, Rowe, Smith & Davis LLP**<br>Metro Corporate Campus One<br>P.O. Box 5600<br>Woodbridge, New Jersey 07095<br>(732) 549-5600<br>Proposed Attorneys for the Debtors<br>David L. Bruck, Esq. | Order Filed on September 24, 2014<br>by<br>Clerk<br>U.S. Bankruptcy Court<br>District of New Jersey |
| In re:<br><br>**MUNIRE FURNITURE COMPANY, INC.,**<br><br>                    Debtor. | Chapter 11 Proceeding<br><br>Case No.:  14-29229 (CMG) |

## <u>INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL, PROVIDING ADEQUATE PROTECTION AND SETTING A FINAL HEARING</u>

The relief set forth on the following pages, numbered two (2) through seven (7), is hereby **ORDERED**.

DATED: September 24, 2014

_____
Honorable Christine M. Gravelle
United States Bankruptcy Judge

**THIS MATTER** having come before the Court on the motion (the "Motion")[1] of the Munire Furniture Company, Inc. ("Munire") (the "Debtor") for entry of an interim order pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 and Fed. R. Bankr. P. 4001 (i) approving the use of cash collateral, (ii) providing adequate protection, and (iii) setting a final hearing pursuant to Fed. R. Bankr. P. 4001; and the Court finding that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Motion is in the best interest of the Debtor, its estate and creditors; (iv) proper and adequate notice of the Motion and the hearing thereon has been given and that no other or further notice is necessary; and (v) upon the record herein, after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein, it is hereby

**ORDERED:**

1. **Use of Cash Collateral.** The Debtor is authorized, in accordance with the cash collateral budget (the "Budget") attached hereto as EXHIBIT A, to use Bank Leumi's cash collateral. The Budget is a line-item budget.[2] The Debtor may not use cash from one line item to subsidize another line item. The Debtor may amend, alter, revise or supplement the Budget after the date of this Order with the written consent of Bank Leumi, which consent shall not be unreasonably withheld. The Debtor is authorized to retain all cash receipts collected during any

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

[2] Wages for prepetition wages will be subject to disgorgement. *CMG*

week to the extent necessary to fund the operating expenses contained in the Budget. Rosenthal & Rosenthal and Bank Leumi shall deposit in the Debtor's DIP account at Bank Leumi all proceeds of the collection of cash collateral excluding only the fee of 0.4% to be deducted by Rosenthal & Rosenthal from collections. For the purposes of this Order, the term "cash receipts" means all funds collected by or for the Debtor.

2. **DIP Account to be Retained at Bank Leumi**. The Debtor shall maintain its Debtor in Possession account (the "DIP Account") at Bank Leumi and Bank Leumi shall have the ability to monitor the account, which shall not be deemed a violation of the automatic stay.

3. **Adequate Protection.** As adequate protection for use of cash collateral, Bank Leumi is hereby granted:

(a) **Monthly Payments.** The Debtor will make monthly payments in the amount of $57,400 to Bank Leumi; the first payment shall be made in the amount of $14,300 upon entry of this Order and then as set forth in the Budget.

(b) **Replacement Lien.** A replacement perfected security interest under section 361(2) of the Bankruptcy Code to the extent Bank Leumi's cash collateral is used by the Debtor, to the extent of any diminution in the value of Bank Leumi's collateral with the same priority in the Debtor's post-petition collateral, and proceeds thereof, that Bank Leumi held in the Debtor's prepetition collateral, subject to fees pursuant to 28 U.S.C. § 1930(a)(6). Nothing herein shall be deemed to alter or affect any valid, pre-petition security interests in or liens on the Debtor's assets

3

held by any secured creditor other than Bank Leumi. The replacement lien granted herein shall not prime, alter or affect the priority of any valid, prepetition security interests in or liens on the Debtor's assets held by any secured creditor. The replacement lien granted herein is valid to the extent that Bank Leumi holds a valid pre-petition security interest and lien on Debtor's assets.

(c) **Deemed Perfected.** The replacement lien granted herein is automatically deemed perfected upon the entry of this Order without the necessity of Bank Leumi taking possession, filing financing statements, mortgages or other documents. Although not required, upon request by Bank Leumi, the Debtor shall execute and deliver to Bank Leumi any and all UCC Financing Statements, UCC Continuation Statements, or other instruments or documents considered by Bank Leumi to be reasonably necessary in order to perfect the security interest and lien in Bank Leumi's post-petition collateral and proceeds granted by this Order, and Bank Leumi is authorized to receive, file and record the foregoing at their own expense, which actions shall not be deemed a violation of the automatic stay embodied in 11 U.S.C. § 362.

(d) **Default Hearing.** In the event the Debtor defaults or violates this Order, Bank Leumi is entitled to request a hearing upon delivery of written notice to counsel for the Debtor within five (5) days (or if immediate and irreparable injury, loss or damage may occur, an emergency hearing within 48 hours).

4. **Bank Leumi's Rights of Inspection and Audit.** Upon reasonable written notice by Bank Leumi, the Debtor shall permit Bank Leumi and its agents

4

reasonable access to the Debtor's records and place of business during normal business hours to, at Bank Leumi's expense, verify the existence, condition and location of collateral in which Bank Leumi holds a security interest and to audit, the Debtor's cash receipts and disbursements. Bank Leumi shall insure that the Debtor's business and employees are not disrupted by any such inspection or audit.

5. **Carveout for the Debtor's Estate, Professionals Retained by the Estate a nd Quarterly Fees as Billed by t he United States Trustee.** Bank Leumi consents to the carveout for the benefit of the Debtor's Estate and the Professionals retained by the Estate the sum of $100,000 for PricewaterhouseCoopers LLP ("PwC") and $50,000 for Greenbaum, Rowe, Smith & Davis LLP ("GRSD"), subject, in each instance, to entry of an Order authorizing the retention by the Debtor of Steven Fleming, a principal at PwC as CRO for the Debtor and GRSD as counsel to the Debtor. The above carveouts are for the period through the Final Hearing which is anticipated to be on or about October 14, 2014, subject to the Court's availability. To the extent that an Official Committee of Unsecured Creditors (the "Committee") is appointed by the United States Trustee and the Committee retains professionals, the carveout set forth above will be expanded, after discussions among the parties, to include the professionals retained by the Committee. The carveout includes the payment of quarterly fees to the U.S. Trustee.

6. **Reservation of Rights.**

(a) By granting Bank Leumi the adequate protection specified herein, the Debtor, and any Official Committee of Unsecured Creditors hereinafter appointed, does not waive, and expressly reserves, its rights to subsequently contest the validity, extent, priority and/or perfection of Bank Leumi's liens and security interests in the Debtor's property and to assert any other claims.

(b) Nothing contained herein shall be deemed or construed to: (i) limit Bank Leumi to the relief granted herein; (ii) bar Bank Leumi from seeking other and further relief (including without limitation relief from the terms of this Order) for cause shown on appropriate notice to the Debtor and other parties-in-interest entitled to notice of same; or (iii) require Bank Leumi to make any loans or advances to the Debtor.

7. **Final Hearing.** A final hearing on the Motion shall be held on October 14, 2014 in the United States Bankruptcy Court, Trenton, New Jersey, at 2:00 p.m. All objections to the Motion and the entry of a final order granting the Motion shall be filed and served by September 29, 2014 by 4:00 p.m. (ET). In the event no objections are timely filed, this Order shall continue in full force and effect and shall be deemed a final order without further notice or hearing in accordance with Federal Rules of Bankruptcy Procedure 4001(d)(3).

8. **Notice of Order.** Within two (2) business days of the entry of this Order, the Debtor shall serve, or caused to be served, a copy of this Order by first class mail on: (i) the Office of the United States Trustee; (ii) the Debtor's twenty largest unsecured creditors; (iii) counsel for Bank Leumi, the Debtor's secured lender; (iv) KM

6

Capital LLC; (v) Sterling MVC Capital LLC; and (vi) those parties who have filed a notice of appearance and request for service of pleadings in this case pursuant to Bankruptcy Rule 2002.

9. **Immediate Effect.** This Order shall be effective immediately upon its entry.

# EXHIBIT A

**Munire Furniture Co., Inc.**
13-Week Cash Budget
Updated as of 09/23/2014

Exhibit A

*(in $ thousands)*

| Week # | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | Notes | 9/26/14 | 10/3/14 | 10/10/14 | 10/17/14 | 10/24/14 | 10/31/14 | 11/7/14 | 11/14/14 | 11/21/14 | 11/28/14 | 12/5/14 | 12/12/14 | 12/19/14 |
| | | | | | | | | *13 Week Cash Budget* | | | *Targeted Transaction Closing Date* | | | |
| **Receipts** | | | | | | | | | | | | | | |
| Cash Receipts | (A) | $ 800.0 | $ 457.4 | $ 987.4 | $ 378.3 | $ 1,274.5 | $ 1,682.0 | $ 1,364.5 | $ 1,345.7 | $ 1,209.3 | $ 1,752.3 | $ 1,020.9 | $ 911.6 | $ 1,178.9 |
| Other Cash Receipts | (B) | 3,800.0 | | | | | | | | | | | | |
| New Advances | (B) | | | | | | | | | | | | | |
| **Total Collections** | | 4,600.0 | 457.4 | 987.4 | 378.3 | 1,274.5 | 1,682.0 | 1,364.5 | 1,345.7 | 1,209.3 | 1,752.3 | 1,020.9 | 911.6 | 1,178.9 |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Salary & Wages | (C) | 112.8 | - | 103.0 | - | 103.0 | - | 103.0 | - | 103.0 | - | 103.0 | - | 103.0 |
| Medical Benefits | (D) | 25.0 | - | - | - | - | 25.0 | - | - | - | 25.0 | - | - | - |
| Inventory Purchases | (E) | 3,477.0 | 394.9 | 264.8 | 200.6 | 716.7 | 925.8 | 1,110.8 | 854.8 | 1,038.6 | 467.4 | 416.7 | 540.6 | 999.5 |
| Freight and Demurrage | (F) | 830.0 | 149.5 | 150.0 | 100.0 | 205.0 | 246.0 | 346.0 | 275.5 | 205.0 | 205.0 | 205.0 | 205.0 | 205.0 |
| Rent | (G) | - | - | - | 99.4 | - | - | - | 99.4 | - | - | - | 99.4 | - |
| Insurance | (H) | - | - | - | 67.6 | - | 67.6 | - | - | - | - | 67.6 | - | - |
| Bank and Factor Fees | (I) | 7.0 | 7.0 | 7.0 | 7.0 | 7.0 | 7.0 | 7.0 | 7.0 | 7.0 | 7.0 | 7.0 | 7.0 | 7.0 |
| Other Operating Disbursements | (J) | - | - | 45.0 | 33.5 | 2.0 | 41.0 | 2.0 | 36.5 | 2.0 | 43.0 | - | 25.0 | 10.0 |
| Critical Vendor Payments | (K) | - | - | 150.0 | 100.0 | - | - | 150.0 | - | 100.0 | - | - | - | - |
| **Total Operating Disbursements** | | 4,451.8 | 551.4 | 719.8 | 608.1 | 1,033.7 | 1,312.4 | 1,718.8 | 1,273.2 | 1,455.6 | 747.4 | 799.3 | 877.0 | 1,324.5 |
| **Operating Cash Flow** | | 148.2 | (94.1) | 267.6 | (229.9) | 240.9 | 369.5 | (354.2) | 72.5 | (246.3) | 1,004.9 | 221.6 | 34.6 | (145.6) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | |
| Interest Expense / Adequate Assurance | (L) | 15.0 | | | | | | 61.3 | | | | 61.3 | | |
| Professional Fee Payments | (M) | | 10.0 | | | | | | | | | | | |
| Other Bankruptcy Related | (N) | | | | | | 15.0 | | | | 15.0 | | | |
| **Total Non-Operating Disbursements** | | 15.0 | 10.0 | - | - | - | 15.0 | 61.3 | - | - | 15.0 | 61.3 | - | - |
| **Net Cash Inflow / (Outflow)** | | 133.2 | (104.1) | 267.6 | (229.9) | 240.9 | 354.5 | (415.5) | 72.5 | (246.3) | 989.9 | 160.3 | 34.6 | (145.6) |
| **Cumulative Cash Flow** | | $ 133.2 | $ 29.1 | $ 296.7 | $ 66.9 | $ 307.7 | $ 662.3 | $ 246.8 | $ 319.4 | $ 73.1 | $ 1,063.0 | $ 1,223.3 | $ 1,257.9 | $ 1,112.2 |

*Notes:*
(A) Cash Receipts are based on actual and forecasted sales.
(B) Other Cash Receipts represents the pre-payment program negotiated with Babies 'R' Us.
(C) Salary & Wages include payroll and payroll taxes.
(D) Medical Benefits related to employee health benefits. The Company's medical plan is fully insured, amount varies based on headcount.
(E) Inventory purchases include payments to vendors to release goods currently held at port, pending release of Bill of Lading ("BoL").
(F) Payment for all distribution related expenses, including ocean freight, storage, and demurrage costs.
(G) Rent payments for corporate office and warehouse in NJ.
(H) Insurance is payments for the Company's general liability, Workers' Comp and D&O insurance policy.
(I) Credit Card processing fees from bank. Factor fees for collection of A/R.
(J) Other Operating Disbursement includes items such as, office supplies, T&E, QC contract labor, and packing materials.
(K) Critical vendor payments made to suppliers and vendors considered critical for ongoing business.
(L) Interest expense on loan outstanding.
(M) Payments to retained professionals
(N) Other Non-Operating expenses include Utilities deposit and US Trustee fees.