| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-2(c)<br><br>**Greenbaum, Rowe, Smith & Davis LLP**<br>Metro Corporate Campus One<br>P.O. Box 5600<br>Woodbridge, New Jersey 07095<br>(732) 549-5600<br>Attorneys for the Debtor<br>David L. Bruck, Esq. | |
| In re:<br><br>**MUNIRE FURNITURE COMPANY, INC.,**<br><br>Debtor. | Chapter 11 Proceeding<br><br>Case No.: 14-29229 (CMG) |

**DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 363, AND BANKRUPTCY RULES 2002, 6004 AND 6006 FOR ENTRY OF AN ORDER (A) APPROVING BIDDING PROCEDURES; (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS; AND (C) GRANTING RELATED RELIEF**

Munire Furniture Company, Inc., the above captioned Debtor (the "Debtor"), by and through its undersigned counsel, hereby files this motion (the "**Motion**") for entry of an order (the "**Bidding Procedures Order**"), pursuant to 11 U.S.C. §§105(a) and 363(b), (a) authorizing and approving certain bidding procedures (the "**Bidding Procedures**"), (b) scheduling an auction (the "**Auction**") and a hearing (the "**Sale Approval Hearing**") to consider the sale of substantially all of the Debtor's Assets; and (c) granting related relief. In support of the Motion, the Debtor respectfully states as follows:

1

3168413.1

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

2. The statutory and legal predicates for the relief sought herein are 11 U.S.C. §§105(a) and 363 of the Bankruptcy Code.

## GENERAL BACKGROUND

3. On September 19, 2014 (the **"Petition Date"**), Munire Furniture Company, Inc. (hereinafter, **"Munire"** or the **"Debtor"**) filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

4. The Debtor remains in possession and control of its assets, as a Debtor-in-Possession.

5. The Debtor is engaged in the business of design, sale and distribution of children's nursery furniture from its premises located at 91 New England Avenue, Piscataway, New Jersey.

6. The Office of the United States Trustee has appointed a Committee of Unsecured Creditors (the "Committee"). The Committee is represented by Lowenstein Sandler as counsel, and Emerald Capital Advisors as Financial Advisor.

7. The assets of the within Bankruptcy Estate consist of the business as a going concern, including accounts receivable, inventory, designs, leases, IP, good will and other assets used in connection with the operation of the Debtor's business, as well as cash in the Debtor's DIP account and causes of action.

8. The Debtor has solicited interest in an effort to generate a stalking horse bidder, but has not yet selected such stalking horse bidder. Nevertheless, the Debtor wishes to establish bidding procedures at this time.

9. Pursuant to the within Motion, the Debtor seeks approval by this Court of certain bidding procedures with regard to a sale of substantially all of the Debtor's Assets (the "Assets").

## MARKETING OF THE ASSETS AS A GOING CONCERN

10. Steven J. Fleming was appointed by the Debtor as the chief restructuring officer (the "CRO") on September 19, 2014 and an Order was entered on October 14, 2014 approving his retention. Since his appointment by the Debtor, the CRO has been engaged in the solicitation of interested bidders for the sale of the Debtor's business as a going concern.

11. The CRO and his staff sent out teasers to more than five hundred (500) prospective buyers and received interest from thirty (30) interested parties. Of those, twenty-five (25) signed NDAs and were given access to the Data Link. A number of interested parties have been on site conducting due diligence and letters of intent have been received from seven (7) entities to date.

12. After identifying the most likely potential purchasers, the CRO and Debtor's counsel have engaged in negotiations to produce the highest offer for the purchase the Assets as a going concern. While the Debtor has not yet selected a stalking horse bidder, it seeks by this Motion, to establish bidding procedures and reserves the right to file a sale notice upon selection of a Stalking Horse Bidder.

3168413.1

13. The Motion seeks to schedule the following:

   a. End of Due Diligence on November 14, 2014;

   b. Close of submission of qualified bids on November 14, 2014 (the "Bid Deadline");

   c. Auction to be held at offices of Greenbaum, Rowe, Smith & Davis on November 17, 2014 at 11:00 a.m.;

   d. Sale Approval Hearing on November 19, 2014 at 11:00 a.m.;

   e. Closing on Sale on November 21, 2014.

## SUMMARY OF RELIEF REQUESTED

14. The Debtor seeks the entry of a Bidding Procedures Order substantially in the form submitted herewith:

   a. Approving Bidding Procedures for the solicitation and consideration of competing offers for the sale of the Assets including (i) procedures for submitting bids for any and all of the Assets, and (ii) conducting an auction (the "Auction") with respect to any Assets in the event that the Debtor receives more than one bid;

   b. Scheduling the Auction and a Hearing to approve the sale of the Assets pursuant to an Asset Purchase Agreement (the "APA") and a deadline for filing of any objections to the sale prior to the Sale Approval Hearing; and

   c. Approving the form of notice of the Bidding Procedures, the Auction and the Sale Approval Hearing, substantially in the form attached to the Bidding Procedures Order to be served upon the noticed Parties (as defined below);

15. At the Sale Approval Hearing, the Debtor will seek approval of an APA with a Stalking Horse Bidder if there is such a Stalking Horse Bidder, or such other Agreement with the successful bidder at the Auction. The Debtor shall request that the

4

3168413.1

Asset sale be declared tax exempt pursuant to Section 1146(a) of the Bankruptcy Code, and that the parties be exempt from compliance with the NJ Bulk Sales Law.

16. The Debtor expressly reserves the right to modify the relief requested in this Motion, including the proposed Bidding Procedures, prior to or at the applicable hearing.

17. The Debtor seeks to generate the greatest value for the Assets of the within Estate. The Debtor believes the proposed Bidding Procedures, which are set forth in the proposed Bidding Procedures Order, will maximize the realizable value of the Assets for the benefit of the Bankruptcy Estate, its creditors and other parties in interest. The Bidding Procedures were developed consistent with the Debtor's need to expedite the Sale Process, but with the objective of promoting active bidding that will result in the highest and best offer the market place can sustain for the Assets. Moreover, the Bidding Procedures reflect the Debtor's objective of conducting an Auction in a controlled, but fair and open fashion that promotes interest in the Assets by financially capable, motivated bidders, who are likely to close a transaction while simultaneously discouraging non-serious offers and offers from persons the Debtor does not believe are sufficiently capable or likely to consummate a transaction.

18. As described below and more fully in the Bidding Procedures, the Debtor proposes a two phase process, whereby (a) bids are solicited from Qualifying Bidders (as defined below) and, (b) assuming the Debtor receives at least one Qualifying Bid (as defined below), an Auction occurs. Only Qualified Bids will be eligible to participate in an Auction. The following paragraphs in this section summarize key provisions of the

Bidding Procedures, but are qualified in their entirety by reference to the actual Bidding Procedures set forth in the proposed Bidding Procedures Order:

(a) **Assets to be sold.** The Assets to be offered for sale consist of substantially all of the Debtor's Assets used in connection with the operation of its business, excluding the Excluded Assets to be defined in an APA.

(b) **Provisions Governing Qualification of Bidders.** As a pre-requisite to becoming a Qualified Bidder, a potential bidder must:

   a. provide such financial and other information as the Debtor shall reasonably deem necessary to provide sufficient support for the ability of a potential bidder to consummate a transaction to purchase the Assets, if such bidder is selected as the Successful Bidder.

**(c) Access to Due Diligence Materials.** The Debtor will afford Qualified Bidders the opportunity to conduct reasonable due diligence on site and through the Data Link, subject to the parameters that the Debtor, in consultation with its advisors, determines are business sensitive or otherwise appropriate for disclosure to such Qualified Bidders. The Due Diligence Period shall extend through and including November 14, 2014. The Debtor and its representatives and advisors shall not be obligated to furnish any Due Diligence information after the Bid Deadline.

**(d) Provisions Governing Qualified Bid Requirements.** A Qualifying Bidder that desires to make a bid shall deliver a written or electronic copy of its Bid so that it is served upon and actually received by counsel for Debtor, on or before 5:00 p.m. prevailing Eastern Time, on November 14, 2014

3168413.1

(the "Bid Deadline"). Bids must be sent to Steven J. Fleming, c/o PricewaterhouseCoopers LLP, 300 Madison Avenue, New York, NY 10017, steven.fleming@us.pwc.com so as to be received no later than the Bid Deadline.

19. An entity that desires to submit a Bid to purchase the Assets shall do so in writing as follows:

    a. All Bids shall state that the Qualified Bidder offers to purchase the Assets, on the terms and conditions substantially the same as those set forth in an APA, or pursuant to an alternative structure that the Debtor determines, in consultation with his advisors, is no less favorable than the terms and conditions of an APA, and provided further that the aggregate consideration offered by any bid or combination of bids for all or substantially all of the Debtor's Assets satisfies the Initial Overbid requirements set forth below;

    b. All Bids must be on terms that, in the Debtor's business judgment, are the same or better than the terms of the Stalking Horse Bid, should there be one;

    c. All Bids must include a duly executed APA, blacklined to show any changes from the Stalking Horse Bidder's APA (should there be one), clearly setting forth any conditions for closing and stating that the Bid is irrevocable;

    d. all Bids must propose a purchase price equal to or greater than the aggregate of the sum of (i) the Stalking Horse Bid, if any; plus (ii) the sum of any Bidding Protections awarded by the Court; (iii) the sum of TWO HUNDRED THOUSAND DOLLARS $200,000.00 in cash or cash equivalents (the "**Initial Overbid**");

    e. a Bid must clearly set forth the purchase price to be paid, and must not request or entitle such Qualified Bidder to any expense reimbursement, break-up fee, termination or other similar type of fee or payment;

    f. a Bid shall not be contingent upon any due diligence investigation, any material adverse change, the receipt of financing, or approval by any board of directors, shareholders, or other entity; with the

exception of the entry of an Order by the Bankruptcy Court approving the sale to the Bidder;

g.  a Bid must include evidence, including financial statements (or such other form of financial disclosure and credit quality support reasonably acceptable to the Debtor, sufficient to establish the financial wherewithal of the interested party to complete the contemplated transactions and, to the extent the interested party will rely upon the financial wherewithal of an affiliate, franchisor, or other sponsor, evidence sufficient to establish the financial wherewithal, intent and ability of the sponsor to provide appropriate financial support;

h.  a Bid must fully disclose the identity of the Qualified Bidder, and authorization and approval to submit and consummate such bid;

i.  a Bid must state that the bidder is financially able and willing to consummate and fund the proposed transaction by no later than November 21, 2014;

j.  a Bid must include a cashier's check or be accompanied by a wire transfer payable and delivered to the Debtor in the amount of 10% (ten percent) of the Bid, (the "Good Faith Deposit");

k.  a Bid must disclose any agreements or understandings between the bidder and any third party with respect to the Assets or with respect to any possible transaction involving the Debtor's business;

l.  a Bid must clearly state that it is irrevocable through the conclusion of the Sale Hearing, provided that if such bid is accepted as the Successful Bid or the Backup Bid, such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures, through the closing of the Sale.

20.  Prior to the Auction, the Debtor shall determine, in its reasonable judgment, which of the Qualified Bids constitutes the highest or best value to the Debtors or its estates. The Debtor shall, notify the Stalking Horse Bidder, should there be one, and all other Qualified Bidders that it has received Qualified Bids and provide copies of all blacklined APAs received from any Qualified Bidders no later than

8

3168413.1

November 16, 2014 or no less than one day before the Auction Date, if it has been scheduled for a date other than November 17, 2014.

**The Auction and Auction Rules**

21. In the event that the Debtor timely receives one or more Qualified Bids other than a Stalking Horse Bid, if any, the Debtor shall conduct an Auction on a date as set forth by the Bankruptcy Court, provided that such date shall be no later than November 17, 2014 (the **"Auction Date"**) at the offices of Debtor's counsel, Greenbaum, Rowe, Smith & Davis LLP, 99 Wood Avenue South, Iselin, New Jersey, which shall be conducted according to the following procedures:

   a. The Debtor and its professionals shall direct and preside over the Auction. At the start of the Auction, the Debtor shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline. Each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or sale of the Assets;

   b. An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of the highest and best Bid;

   c. Any Overbid after the Debtor announces the highest and best Bid must be an amount equivalent to (ONE HUNDRED THOUSAND DOLLARS) $100,000.00 in excess of the previous highest Bid;

   d. Any Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must remain open and binding on the Bidder until and unless the Debtor accepts a higher Overbid;

   e. Should Overbids be made at the Auction, the Debtor shall announce whether the Debtor considers the Overbid to be the highest and best Bid received;

   f. The Debtor reserves the right, in its business judgment, to make one or more continuances of the Auction Date, provided that such

continuance shall not exceed in the aggregate five (5) days from the first scheduled Auction Date;

g. At the conclusion of the Auction, and subject to Court approval following the Auction, the successful Bid or Bids shall be selected and announced by the Debtor, (the **"Successful Bid"**) and, if applicable, the backup Bid or Bids shall be selected and announced by the Debtor (the **"Backup Bid"**);

22. Within 24 hours of completion of the Auction, the entity or entities that made the Successful Bid (the **"Successful Bidder"**) and the entity or entities that made the Backup Bid or Bids shall complete and sign all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which such Successful Bid and Backup Bid.

23. If no Qualified Bids are received for the Assets and there is a Stalking Horse Bidder, the Stalking Horse Bidder shall be deemed the Successful Bidder with respect to the Assets, and the Debtor shall seek Court approval of the Contract, without offering the Assets for sale at the Auction.

24. The Auction may be adjourned or canceled as the Debtor deems reasonably necessary subject to Court approval. Provided, however, that the Debtor may not adjourn the Auction for more than five (5) days in the aggregate from the first scheduled Auction Date without the prior written consent of Bank Leumi and the Committee. Prompt notice of such adjournment and the time and place for the resumption of the Auction or cancellation shall be given to all participants.

25. The Debtor submits that implementation of the Bidding Procedures and the time table set forth herein is critical to maximize the value of the Assets of the Debtor's Estates. The Debtor believes that the time table is necessary in order to

10

3168413.1

maximize the value of the Debtor's Assets and to minimize the administrative expenses incurred by the Chapter 11 Estate.

## BASIS FOR RELIEF

### A. A Sale of the Assets Pursuant to an APA is Authorized By Bankruptcy Code Section 363(b).

26. Section 363(b)(1) of the Bankruptcy Code provides that a debtor (or Debtor), "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Section 105(a) provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

27. A sale of a debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business justification exists for doing so. *See, e.g., Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991). The *Delaware & Hudson Railway* court rejected the pre-Code "emergency" or "compelling circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under *McClung* and *Lionel*, observing:

11

3168413.1

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include: the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the assets; and whether the asset is decreasing or increasing in value.

124 B.R. at 176.

28. The *Delaware & Hudson Railway* court further held that "[o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the Debtor has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith." *Id.*

29. The Debtor has proposed the sale of the Assets after thorough consideration of viable alternatives, and has concluded that the sale is supported by a number of sound business reasons. Hence, the Debtor has determined that a sale of the Debtor's Assets, including the Assets pursuant to an APA, provides the best and most efficient means for the Debtor to maximize the value of these particular Assets for its estate.

30. As discussed *supra*, the Debtor, with the assistance of its professionals, has been marketing the Debtor's Assets for sale since the Filing Date. Such marketing has culminated in, among other things, various expressions of interest from potential bidders. As a result of the Debtor's efforts, the Debtor submits that the Debtor is prepared to test the market.

3168413.1

31. The Debtor submits that a sale of the Assets is justified by sound business reasons and is in the best interests of the Debtor and its estate. Accordingly, pursuant to section 363(b) of the Bankruptcy Code, the Debtor requests approval of the Bidding Procedures, reserving the right to file a Sale Motion should a Stalking Horse Bidder be selected.

**B. The Sale of Assets Free and Clear of Liens, Claims and Interests is Authorized Under Bankruptcy Code Section 363(f).**

32. Section 363(f) of the Bankruptcy Code provides:

33. The Debtor may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if

   (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
   (2) such entity consents;
   (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such Acquired Assets;
   (4) such interest is in a bona fide dispute; or
   (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

34. As quoted above, section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests." The term "any interest," as used in section 363(f), is not defined anywhere in the Bankruptcy Code. *Folger Adam Security, Inc. v. DeMatteis / MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000).

35. In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest." 209 F.3d at 258. The court observed that while some courts have

13

3168413.1

"narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property." *Id.* at 258 (citing 3 Lawrence P. King, *Collier on Bankruptcy*, 363.06[1]).

36. As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 73, 581-82 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of 11 U.S.C. § 363(f) is not limited to *in rem* interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under §363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F.3d at 258.

37. The language of Section 363(f) is in the disjunctive, so that a sale free and clear of interests can be approved if any one of the enumerated conditions is satisfied. *In re Heine*, 141 B.R. 185, 189 (Bankr. D.S.D. 1992); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

38. As made clear by the statute, under Section 363(f)(2), a bankruptcy debtor may sell estate property free and clear of interests where the interest holders consent to such a sale. 11 U.S.C. § 363(f)(2). The requisite consent may either be express or implied from the circumstances surrounding the sale. Here, Bank Leumi is the primary secured creditor with a perfected security interest in the Debtor's Assets in excess of the liquidation value of the Assets. Bank Leumi consents to the Bidding Procedures and the sale of the Debtor's Assets.

**C.     Sale in Furtherance of a Plan.**

39. Section 1146 of the Bankruptcy Code provides that the making or delivery of an instrument of transfer under a confirmed Chapter 11 plan may not be taxed under any law imposing a stamp or similar tax. See 11 U.S.C. Section 1146(c). In fact, many courts have construed this provision to include transfers under a sale outside of, but in furtherance of effectuating, a plan. *See, e.g., Director of Revenue, State of Delaware v. CCA Partnership (In re CCA Partnership)*, 70 B.R. 696 (Bankr. D. Del. 1987), aff'd, 72 B.R. 765 (D. Del. 1987), aff'd, 833 F:2d 304 (3d Cir. 1987); *see also, e.g., In re Jacoby-Bender, Inc.*, 40 B.R. 10 (Bankr. E.D.N.Y. 1984), aff'd, 758 F.2d 840 (2d Cir. 1985); *In re 995 Fifth Ave. Assoc., L.P.*, 116 B.R. 384 (Bankr. S.D.N.Y. 1990), aff'd, 127 B.R. 533 (S.D.N.Y. 1991).

40. The Debtor intends to file a Chapter 11 plan that will utilize the consideration received in the Sale for the purpose of making distributions to creditors and other parties in interest. The Debtor respectfully requests, therefore, that the Court rule that Section 1146(c) of the Bankruptcy Court applies to the Sale and expressly order that the Sale may not be taxed under any law imposing a stamp or similar tax.

## **NOTICE AND PROCEDURES THEREFOR**

41. Provided the Court enters the proposed Bidding Procedures Order, the Debtor requests that pursuant to the Bidding Procedures Order, no later than two (2) business days after entry of the Bidding Procedures Order, the Debtor shall serve a copy of the Bidding Procedures Order (including a Notice of Auction and Sale Hearing) upon the following by first-class mail: (i) the Office of the United States Trustee for the

15

3168413.1

District of New Jersey; (ii) counsel to the Creditors Committee; (iii) counsel to Bank Leumi; (iv) all other entities (or counsel therefor) known to have asserted any liens, claims or encumbrances in or upon the Assets; (v) all federal, state and local regulatory or taxing authorities that are reasonably known by the Debtor to have an interest in the relief requested by the Motion; (vi) all parties known by the Debtor to have expressed a *bona fide* interest in acquiring the Assets; (vii) the Internal Revenue Service; (viii) the United States Attorney's office; and (ix) all entities who have filed a notice of appearance and request for service of papers in the Debtor's case (collectively, the **"Auction and Sale Notice Parties"**).

42. Additionally, no later than two (2) business days after entry of the Bidding Procedures Order by the Bankruptcy Court, the Debtor shall cause a Notice of Auction and Sale Hearing to be served upon all other known creditors of the Debtor and all parties to any executory contracts and unexpired leases to be assumed.

43. The Debtor further requests, pursuant to Fed. R. Bankr. P. 9014, that objections, if any, to the relief requested in the Sale Motion, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the Clerk of the Bankruptcy Court for the District of New Jersey, Clarkson S. Fisher Federal Building and U.S. Courthouse, 402 East State Street, Courtroom #3, Trenton, New Jersey 08608, on or before _____, 2014 at 4:00 p.m. (prevailing Eastern Time) and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon the Bidding Procedures Notice Parties.

16

3168413.1

44. The Debtor believes that the foregoing notice procedures to the Bidding Procedures Notice Parties, the Auction and Sale Notice Parties and other parties in interest is sufficient to provide effective notice of the Bidding Procedures, the Auction and the Sale Hearing to potentially interested parties in a manner designed to maximize the chance of obtaining the broadest possible participation while minimizing the costs to the estate. Accordingly, the Debtor requests that the Court find that notice in this manner is sufficient and that no further notice of the Auction or the Bidding Procedures is required.

45. Due to the need to immediately commence the bidding process, the Debtor requests a waiver of the 14 day stay pursuant to 6004(h) and 6006(d).

## **NO PRIOR REQUEST**

46. No previous motion for relief requested herein has been made to this or any other court.

17

3168413.1

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that this Court enter the Bidding Procedures Order submitted herewith (a) approving the Bidding Procedures; (b) scheduling an Auction and Sale Hearing; and (c) approving the Notice of Auction and Sale Hearing. The Debtor further requests that this Court grant such other and further relief as is just and proper.

**GREENBAUM, ROWE, SMITH & DAVIS LLP**
Counsel to Munire Furniture Company, Inc.,
Debtor-in-Possession

*David L. Bruck*

By:_____
     DAVID L. BRUCK, ESQ.

Dated:  October 24, 2014